IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 14, 2026

**STATE OF TENNESSEE v. WAYNE MORRIS FLOOD**

**Appeal from the Circuit Court for Hickman County**
**No. 24-5188CR    Michael E. Spitzer, Judge**

———————————————

**No. M2025-01299-CCA-R3-CD**

———————————————

The Defendant, Wayne Morris Flood, appeals from the Hickman County Circuit Court's probation revocation for his eight-year sentence for possession with intent to sell or deliver 0.5 gram or more of methamphetamine. On appeal, the Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. We reverse the judgment of the trial court and remand this case for the trial court to reinstate the Defendant to probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ, J., joined. STEVEN W. SWORD, J., filed a dissenting opinion.

Melanie T. Cagle, District Public Defender; Michael P. Auffinger, Assistant Public Defender, for the appellant, Wayne Morris Flood.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Joshua R. Gilbert, Qualified Law Student; Hans L. Schwendimann, District Attorney General; and Jacob R. McElyea, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 2, 2024, the Hickman County Grand Jury indicted the Defendant for one count of possession with intent to sell or deliver 0.5 gram or more of methamphetamine, one count of possession of drug paraphernalia, and one count of failure to change driver's license address. On March 11, 2025, the Defendant pleaded guilty as a Range I, standard offender to the drug possession charge, a Class B felony, and received an eight-year sentence, suspended to supervised probation. *See* T.C.A. §§ 39-17-417(c)(1)

(Supp. 2023) (subsequently amended) (criminal offenses and penalties); -434 (2025) (manufacture, delivery, sale, or possession of methamphetamines). As part of his plea agreement, the Defendant agreed to comply with conditions of probation and to complete a one-year residential treatment program at the Hope Center in Hohenwald. The remaining counts were dismissed. On March 14, 2025, the Defendant entered the Hope Center program.

Before the Defendant pleaded guilty in this case, the Defendant was on parole for two counts of second degree burglary in Missouri. In June 2023, the Defendant's Missouri parole supervision was transferred to the Tennessee Department of Correction (TDOC) pursuant to the Interstate Compact Offender Tracking System (ICOTS).

On May 20, 2025, the Defendant's probation officer submitted to the trial court a probation violation report alleging that the Defendant had violated probation rules 5, 6, and 10 and had absconded, the latter of which is a zero tolerance offense. The report's "Details of Alleged Violation(s)" are as follows:

> Rule 5: I will inform my Probation Officer before changing my residence or employment. I will get the permission of my Probation Officer before leaving my county of residence or the State. . . .
>
> On May, 7, 2025, the offender voluntarily left the Hope Center Program and moved without permission from his Probation Officer. The offender has not reported a new address to his officer, and his current location is unknown.
>
> Rule 6: I will allow my Probation Officer to visit my home, employment site, or elsewhere, will carry out all lawful instructions [he] or she gives, [and] will report to my Probation Officer as instructed. . . .
>
> On March 11, 2025, Judge Spitzer ordered the offender to complete the Hope Center Program. On May 7, 2025, the offender voluntarily left the program and has not reported to his supervising officer. The offender was also ordered to report in person once per month, but has failed to comply. His current whereabouts are unknown. The supervising officer has made unsuccessful attempts to contact him via his last known phone number and listed collateral contacts.
>
> Rule 10: I will observe any special conditions imposed by the Court.
>
> On March 11, 2025, the offender was ordered by Judge Spitzer to complete the Hope Center Program. On May 7, 2025, the offender

voluntarily left the program and was discharged. The offender has not reported to his officer since this date.

The report also stated "Sanctions Imposed by Community Supervision" as follows: "May 19, 2025 – A zero-tolerance violation was imposed for absconding supervision and failure to comply with special condition."

On May 20, 2025, the trial court issued a warrant stating that the Defendant violated probation rules 5, 6, and 10. The warrant contained factual allegations identical to those in the probation violation report regarding the probation rules. However, neither the warrant nor the affidavit accompanying the warrant, served May 23 on the Defendant, alleged that the Defendant had absconded or that he was charged with a non-technical probation violation.

At an August 12, 2025 probation violation hearing, the State argued that the Defendant did not complete the Hope Center program, which was a condition of his probation, and noted that the Defendant had signed an extradition waiver to return to Missouri. Defense counsel told the trial court that the Defendant had been accepted into a different Hope Center, located in Paris, Tennessee, where the Defendant would like to continue treatment. TDOC Probation and Parole officer Keith Moore testified that, in June 2023 when the Defendant came to Tennessee, Mr. Moore began supervising the Defendant's parole as a result of his Missouri convictions. Mr. Moore said that he also supervised the Defendant's probation in the present case and that, on May 7, 2025, the Defendant failed to complete the Hope Center program by voluntarily leaving the center. Mr. Moore stated that the Defendant did not have any contact with Mr. Moore after the Defendant left the center and that Mr. Moore was unable to locate the Defendant. Mr. Moore said that he submitted a "zero-tolerance absconder warrant . . . which was approved [as] a violation of [the Defendant's] [Missouri] parole." Mr. Moore explained that Missouri issued a warrant for the parole violation of absconding and that the Defendant waived a probable cause hearing with regard to that charge. Mr. Moore said that because the Defendant admitted to absconding on the interstate compact probable cause and extradition waiver form, "[t]he charges and the convictions weren't added on to this current warrant because we ended up holding him for the new probations – and so absconding is the only thing on there[.]"

On cross-examination, Mr. Moore testified that after he began supervising the Defendant in June 2023, and before the Defendant entered into a plea agreement in this case, the Defendant had multiple positive screens for methamphetamine, for which Mr. Moore submitted two zero tolerance violations through ICOTS. Mr. Moore thought that the Defendant's Missouri sentence ended in August 2025. Mr. Moore said that no one at the Hope Center had any information regarding the Defendant after he left.

-3-

The interstate compact probable cause hearing waiver form and the Defendant's application for interstate compact transfer were received as exhibits. The probable cause hearing waiver form alleged that the Defendant absconded by leaving the Hope Center, that an absconder investigation was conducted, and that a warrant was issued in Hickman County, Tennessee. The Defendant checked a box on the form admitting guilt to the absconding charge and waiving his right to discuss the matter with an attorney. The Defendant also agreed to waive extradition and to return to Missouri.

The Defendant testified that he received a five-year sentence in Missouri for two burglary charges, that he served almost three years of that sentence in confinement, and that he moved to Tennessee in June 2023 after being paroled in Missouri. The Defendant said that he worked as a caregiver before being arrested in Tennessee. The Defendant acknowledged that he voluntarily left the Hope Center in Hohenwald because some offenders there received "special privileges." The Defendant said he told the Hope Center director that he planned to leave and that the Hope Center "knew where [he] was the whole time [he] was out." The Defendant also said that he had been accepted into a different Hope Center program located in Paris. His acceptance letter to the Hope Center in Paris dated July 15, 2025, was received as an exhibit. The Defendant said that he never failed a drug test while at the Hope Center and that he would like to attend the program in Paris. The Defendant stated that he was motivated to change his life because his substance use had destroyed his family relationships. The Defendant acknowledged his substance use problem and his need for rehabilitative help. The Defendant also acknowledged that before starting the treatment program in Paris, he needed to complete the remainder of his Missouri sentence. The Defendant said that he had someone who could take him to Missouri and then, when he was released, to the Hope Center in Paris.

On cross-examination, the Defendant testified that he understood that completing the Hope Center program was a condition of his probation and that failing to meet this condition constituted a probation violation. The Defendant said that he had difficulty reaching the Hohenwald Hope Center program director to ask to be transferred to a different center and that the center's manager told the Defendant that the Defendant would have to reapply to a Hope Center in a different location. The Defendant said that the program director eventually provided the requested information and that the Defendant was accepted into the Hope Center program in Paris. The Defendant said that people at the Hohenwald Hope Center "said they would let my parole officer and probation officer know where I was." The Defendant acknowledged that no one with the Hope Center programs knew that he would be returning to Missouri. The Defendant agreed that he would complete the Hope Center program if given another chance.

At the close of proof, the State argued that there was sufficient proof for the trial court to find that "a violation" had occurred and requested that the Defendant's probation be revoked. The State noted that the Defendant failed to take responsibility for leaving the

Hope Center program and, instead, blamed perceived favoritism at the center. Defense counsel acknowledged proof of "a violation" and asked for placement at the Hope Center program in Paris when the Defendant returned from Missouri.

The trial court concluded the following:

> The Court reviewed the file in this case and considered the file, heard the proof today at the hearing. The hearing has two phases to it – one was determining whether or not there was a violation. The Court finds by preponderance of the evidence that there was a violation of probation. And in addition to that, considering what sentence would be appropriate on the violation. In this case, the Court finds that [the Defendant] is not a[n] acceptable candidate for continued rehabilitation because he fails to accept any responsibility whatsoever, which is step one in the big book; recognizing he's got a problem and understanding that he has to take care of it on his own and he can't do that; blames other people. He blamed the Hope Center for showing favoritism to others rather than trying to seek an adjustment for himself, which the Court finds he doesn't have the rehabilitative characteristic to do at this point in time in his life. So the Court finds that his probation is revoked, and he is to serve his sentence.

This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. The Defendant does not challenge the finding that he violated the conditions of probation. The Defendant, relying on our decision in *State v. Noel*, alleges that the court only found that the Defendant failed to complete an inpatient drug treatment program, a technical violation, for which the court lacked authority to revoke his probation. 729 S.W.3d 315, 325 (Tenn. Crim. App. 2025). The Defendant also alleges that alternative sentencing was available and would be a more appropriate consequence given his request for help regarding his substance use. The State counters that the court did not abuse its discretion by revoking the Defendant's probation because testimony at the revocation hearing established that the Defendant had absconded from the Hope Center and that the Defendant failed to report to his probation officer.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of

-5-

probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

If the trial court failed to memorialize its reasons for the revocation decision on the record, the appellate court may either conduct a de novo review, provided the record is developed sufficiently for such review, or it may remand the case to the trial court with instructions to make appropriate findings. *Dagnan*, 641 S.W.3d at 759. When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Id*. at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58.

Tennessee Code Annotated section 40-35-311 classifies violations into "technical" and "non-technical" violations. A technical violation "means an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation . . . absconding, or contacting the defendant's victim in violation of a condition of probation." *Id.* § 40-35-311(g) (2025). "[T]he trial judge shall not revoke a defendant's probation and suspension of sentence for a felony offense . . . based upon one (1) instance of technical violation or violations." *Id.* § 40-35-311(d)(2). When a probationer has committed more than one instance of a technical violation, the statute provides as follows:

> (e)(1) If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation . . .by engaging in conduct that is a second or subsequent instance of a technical violation pursuant to subdivision (d)(2), then the trial judge may temporarily revoke the probation . . . and:
>
>> (A) Impose a term of incarceration not to exceed:
>>
>>> (i) Fifteen (15) days for a first revocation;
>>> . . . .
>>>
>>> (iv) The remainder of the sentence for a fourth or subsequent revocation; or
>>
>> (B) Resentence the defendant for the remainder of the unexpired term of a sentence of probation that includes the condition of participating in a

community-based alternative to incarceration . . . provided, that the violation of probation and suspension is a technical violation and does not involve the commission of a new offense.

*Id*. § 40-35-311(e)(1). Thus, "when a defendant is on probation for a felony offense and commits a technical violation of probation, the trial court's authority to order an incarcerative sanction is restricted based on the number of previous 'revocations.'" *State v. Rand*, 696 S.W.3d 98, 103 (Tenn. Crim. App. 2024).

For non-technical probation violations, a trial court has other options. After revoking a defendant's probation on a non-technical violation, the court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution. T.C.A. §§ 40-35-308(a), (c) (2025), -310 (2025), -311(e)(2).

The record reflects that the trial court, after finding a violation of probation, failed to state on the record whether the Defendant committed a technical or non-technical violation and the effect of that violation on the appropriate consequence. *Dagnan*, 641 S.W.3d at 759. Because the court did not memorialize the reasons for its decision on the record and because the record is sufficient for appellate review, we will conduct a de novo review. *See id.*

The warrant, dated May 20, 2025, alleged that the Defendant violated probation rules 5, 6, and 10. At the probation revocation hearing, the Defendant admitted that he left the Hope Center program and acknowledged his understanding that leaving the center constituted a violation of the conditions of his probation. The Defendant left the center on May 7. The warrant was issued on May 20 and served three days later. The warrant's allegations were predicated on the Defendant's leaving the center without permission. Tennessee Code Annotated section 40-35-311(d)(2) provides that "the trial judge shall not revoke a defendant's probation and suspension of sentence . . . based upon one (1) instance of technical violation or violations." *See Noel*, 729 S.W.3d at 325 ("[T]he Defendant's failure to complete the . . . inpatient treatment program is the first instance of a technical violation."). While the State argues that the Defendant absconded, a non-technical violation, the warrant does not reflect that the Defendant was charged with absconding, the parties did not argue absconding at the revocation hearing, and the trial court made no finding with regard to absconding. *See Rand*, 696 S.W.3d at 104-05. We conclude that the record reflects by a preponderance of the evidence that the Defendant violated rules 5, 6, and 10 of the conditions of his probation by voluntarily leaving the Hope Center program without permission from his probation officer resulting in "one instance of technical violation or violations." Accordingly, the Defendant's suspended felony sentence is not subject to revocation. *See* T.C.A. § 40-35-311(d)(2). The court erred in revoking the

-7-

Defendant's sentence.  We reverse the judgment revoking the suspended felony sentence and remand for reinstatement of the Defendant's probation.  *See Noel*, 729 S.W.3d at 325.

In consideration of the foregoing and the record as a whole, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

**s/Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE